DAB

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

FILED

AUG 2 0 2013

JULIE A. RICHARDS, CLERK
US DISTRICT COURT, EDNC
BY ___KM___ DEP CLK

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CRIMINAL INFORMATION |
| | ) Fed. R. Crim. P. 7 |
| v. | ) |
| | ) |
| JAMES WILLIS KIRK, JR. | ) No. 4:13-CR-55-1 |
| | ) |
| GLEN E. SMITH, JR. | ) No. 4:13-CR-55-2 |
| | ) |
| CAROL APRIL GRAFF | ) No. 4:13-CR-55-3 |

THE UNITED STATES ATTORNEY CHARGES THAT:

**INTRODUCTION**

I. PURPOSE OF THE SCHEME TO DEFRAUD

1. Sure Line Acceptance Corporation (SLAC) is a Nevada Corporation, incorporated on June 16, 2005. Between in or around October, 2007 through in or around December 2011, its office was located at 1527 West 5th Street, Washington, North Carolina 27889.

2. From in or around February 2006 and continuing through in or around December 2011, Defendants JAMES WILLIS KIRK, JR. ("KIRK"), GLEN E. SMITH, JR. ("SMITH"), CAROL APRIL GRAFF ("GRAFF"), and Person 1 participated in a scheme and artifice to defraud investors and to obtain money by means of materially false and fraudulent pretenses, representations, and promises through SLAC's investment program.

1

## II. THE SCHEME AND ARTIFICE

3. SLAC conducted fundraising through what it described as a collateralized note program (the "note program").

4. SLAC claimed that it was the financing wing of Automoćion, LLC, a group of three used car dealerships in Smithfield, Washington, and Middlesex, NC.

5. SLAC promised investors in the note program that their investment was backed by collateral, that for every dollar they invested, there was a dollar or more of collateral that existed to protect that investment.

6. But SLAC used new money from investors primarily to repay past investors principal and interest and to pay commissions to three of its officers.

7. In this way, SLAC was a Ponzi scheme where investors were paid their interest from new investor money and not business profits. These payments created the appearance of a successful investment but created a cycle where increasing amounts of new investor money was needed to pay increasing interest payments to past investors.

8. The promises of collateralization were also false. For most of the period SLAC sold its investments, the combined assets of SLAC and Automoćion were less, often far less, than what SLAC owed to investors.

9. The primary sales agent for the SLAC collateralized note program was Person 1, doing business as Company 1. SLAC materials identified Person 1 as a VP/Director on the Management Team for SLAC.

III. HANDLING OF INVESTMENTS

10. Person 1 instructed investors to fill out a form indicating their interest if they wanted to receive materials. When they did so, defendant SMITH, whose office was in Florida, would mail prospective investors materials about the SLAC note program, including a letter, a summary of the SLAC business plan, the SLAC Business Plan, and a collateralized note agreement. These materials made false claims about collateralization and other false statements about SLAC and Automoćion.

11. SMITH was the Chief Financial Officer, Corporate Secretary, and Treasurer of SLAC.

12. Individuals who decided to invest completed these forms and mailed them and a check to SLAC at 1527 West 5th Street, Washington, NC 27889. SLAC made sure that copies of these materials were then mailed to SMITH at his home office in Florida.

13. SMITH handled the finances for the note program. If investors had questions, he was the contact person and would answer questions about the investment.

14. SMITH also kept track of interest owed to investors and provided this information to Defendants KIRK and GRAFF.

15. GRAFF was the Chief Operating Officer, President, and Director of SLAC. At one point, GRAFF, through Company 2, also served as a trustee for the collateral.

16. KIRK was the Chief Executive Officer and Director of SLAC.

17. GRAFF and KIRK handled sending out interest checks to investors.

18. GRAFF and KIRK were also involved with running the car sales and financing side of the business. GRAFF prepared reports about the profitability of each branch, providing these to SMITH, KIRK, and sometimes Person 1.

19. KIRK, SMITH, and GRAFF knew that the money SLAC had to pay in interest was coming from new investor money.

20. KIRK, SMITH, and GRAFF also knew by at least the beginning of 2010 that SLAC's promises of collateralization were false.

21. Person 1 received 10% of all investments made in SLAC. SMITH and KIRK received 3% each of all investments made in SLAC.

4

In addition, SMITH took approximately $90,000 as his salary. KIRK took substantial sums of money in addition to the 3% fee. GRAFF took approximately $200,000 for her salary.

IV. SALE OF UNREGISTERED SECURITIES

22. In the spring of 2009, the Alabama Securities Commission (ASC) determined that Person 1 had solicited Alabama residents to purchase securities in SLAC through the collateralized note program. As part of its investigation, the ASC also reviewed a letter dated May 12, 2009, executed by SMITH, in which SMITH solicited the Alabama residents to become involved in the SLAC collateralized note program.

23. The ASC determined that the collateralized note being marketed by SLAC represented the sale of an unregistered security and that neither Person 1 nor SMITH were registered to sell securities in Alabama.

24. On April 19, 2010, the ASC issued a Cease and Desist Order (C&D) to SLAC, Company 1, JAMES W. KIRK, GLEN E. SMITH, JR., and Person 1. It ordered them to cease further sales of the SLAC collateralized note program in Alabama.

25. On November 4, 2009, Person 2, who was counsel for SLAC and had advised it on the legality of its note program, was indicted by a federal grand jury in the Eastern District of North Carolina on federal fraud charges, unrelated to SLAC.

26. On November 18, 2010, a jury convicted Person 2 of conspiracy, mail fraud, and the sale of unregistered securities. Person 2 was taken into custody that same day.

27. Despite knowing that Alabama had classified the marketing of the SLAC collateralized note program as selling an unregistered security in 2009, and knowing that Person 2—the lawyer who had advised SLAC on securities issues—had been convicted for mail fraud and the sale of unregistered securities charges at the end of 2010, KIRK, SMITH, and Person 1 continued to market the SLAC collateralized note program in states other than Alabama without ever disclosing those facts to investors.

V. MONETARY TRANSACTIONS OF MORE THAN $10,000

28. SLAC used some of the investor money it had fraudulently received to purchase Iraqi currency, including the following purchases:

    a. 2/9/10 - $16,045

    b. 8/5/10 - $20,930

    c. 11/2/10 - $21,356

    d. 2/1/11 - $10,596

29. KIRK, SMITH, and Person 1 discussed these purchases and agreed to make them.

## COUNT ONE
### Conspiracy
### 18 U.S.C. § 371

Paragraphs 1 through 29 of the Introduction are incorporated herein by reference.

Beginning in or around February 2006 and continuing through in or around December 2011, in the Eastern District of North Carolina, the defendants, JAMES W. KIRK, JR., GLEN E. SMITH, JR., and CAROL A. GRAFF did unlawfully and knowingly combine, conspire, confederate, and agree among themselves and others to commit offenses against the United States as follows:

A. <u>Mail Fraud</u>. Having devised a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice, to use the mails and private and commercial interstate carriers to further, advance, and carry out the above-described scheme and artifice, in violation of Title 18, United States Code, Section 1341;

B. <u>Wire Fraud</u>. Having devised a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme, to transmit in interstate commerce, by means of wire communications, certain

signals, that is wire transfers of money to and from the bank accounts used by the defendants for the purpose of executing, and attempting to execute, the scheme and artifice to defraud, in violation of Title 18, United States Code Section 1343;

C. <u>Offer and Sale of Unregistered Securities</u>. To directly and indirectly willfully offer and sell securities when no registration statement was filed with the United States Securities and Exchange Commission ("SEC") and in effect as to the securities, and use the means and instruments of transportation and communication in interstate commerce and the mails in connection with the offer and sale, in violation of Title 15, United States Code, Sections 77e and 77x; and,

D. <u>Engaging in Unlawful Monetary Transactions</u>. To knowingly engage and attempt to engage in monetary transactions affecting interstate commerce in criminally derived property of a value greater than $10,000 and derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957(a).

In furtherance of the conspiracy and to promote its unlawful objects, the defendants committed and caused to be committed overt acts in the Eastern District of North Carolina, including but not limited to the acts identified in paragraphs 10, 12, 13, 14, 17, 18, 21, 27, and 28 above.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### DEFENDANTS SMITH AND KIRK
### Sale of Unregistered Securities and Aiding and Abetting
### 15 U.S.C. §§ 77e and 77x
### 18 U.S.C. § 2

Paragraphs 1 through 29 of the Introduction are incorporated herein by reference.

On or about September 23, 2011, in the Eastern District of North Carolina and elsewhere, defendants JAMES W. KIRK, JR. and GLEN E. SMITH, JR., aiding and abetting each other and Person 1, willfully offered and sold, and caused the offer and sale of securities to victim W.J. when no registration statement was filed with the United States Securities and Exchange Commission and in effect as to the securities, and used the means and instruments of transportation and communication in interstate commerce and the mails in connection with the offer and sale of the securities, in violation of Title 15, United States Code, Sections 77e and 77x, and Title 18, United States Code, Section 2.

THOMAS G. WALKER
United States Attorney

BY: *[signature: David A. Bragdon]*

DAVID A. BRAGDON
Assistant United States Attorney
Criminal Division

9